UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

MICHAEL T. WILSON,                    :

                                                :

    **Plaintiff**                          **CIVIL ACTION NO. 3:15-0283**

                                                :

**v**

                                                :     **(JUDGE MANNION)**

**RHONDA ELLETT,** *et al.,*

                                                :

    **Defendants**

## MEMORANDUM

### I. Background

Plaintiff, Michael T. Wilson, an inmate confined in the State Correctional Institution, Waymart ("SCI-Waymart"), Pennsylvania, filed the above captioned civil rights action pursuant to 42 U.S.C. §1983. The action proceeds via an amended complaint filed by Plaintiff on April 17, 2014. (Doc. 15). Plaintiff names as Defendants, the Pennsylvania Department of Corrections ("DOC"); John Wetzel, DOC Secretary; and the following SCI-Waymart employees: Superintendent Gavin, Deputy Superintendent Ellett, Unit Manager White and Corrections Officer McDonough. Id.

Wilson alleges that between the hours of 6:00 a.m. until 7:30 a.m., during the months of October, 2014, throughout March 2015, and specifically

on January 28, 29, February 2, 3, 4, 7, 13, 16; and March 23, 24 of 2015, while housed on "M-1 housing area", he was "continuously subjected for a prolonged period of time to the bitter cold of winter weather and subfreezing temperatures in [his] cell block area by C/P William McDonough making inmate Russo [and/or inmate Baker] open his window in his cubicle where he sleeps, against inmate Russo's own desire and discretion; and Plaintiff Michael T. Wilson's own desire and discretion." (Doc. 15, amended complaint). Plaintiff claims that inmates Russo and Baker "both explained to [him] that C/O William McDonough make each one of then open his window because of the type of case they were charged with" and Plaintiff believes "this to be true because one can't help noticing that only inmate Russo and inmate Baker had to open their windows out of all the inmates on that entire housing area M-1." Id.

Plaintiff states the he filed a grievance "to try and solve the problem", id., which was denied on February 2, 2015, with the following response:

> The following is a summary of my findings regarding your grievance:
>
> In response to the concerns addressed in your grievance, on Feb. 5, 2015, I surveyed corrections officers who are assigned to housing units throughout the facility. On Unit 4, windows are opened each morning to ventilate the unit to provide fresh air due

2

> to unauthorized smoking which commonly occurs after main lines run. Inmates and staff on the unit are subject to the same conditions.
>
> I spoke with Corrections Officer William McDonough and he stated that his standing routine is to ventilate the unit at the beginning of his shift. Officer McDonough stated that this practice is conducted throughout the institution and is intended to replace stale air and smoke with fresh air. Officers are not implementing this procedure to punish inmates or to place them in a harsh environment. Officers on the units are subject to the same conditions that you cite in your grievance. There is no evidence that any officer is violating your rights.
>
> Your request to be moved to another housing unit will be addressed by our corrections counselor and unit manager.
>
> Your grievance is denied.

(Doc. 16, Plaintiff's Ex. B, Official Inmate Grievance Initial Review Response).

Plaintiff filed the instant action claiming that "the cruel and unusual punishment, oppression, excessively harsh, cruel, inhumane and debasing conditions and treatment to which Plaintiff was subjected to violated Plaintiff's Eighth Amendment rights and constituted cruel and unusual punishment." Id.

For relief, he seeks compensatory and punitive damages, as well as injunctive relief. Id.

Presently before the Court is Defendants' motion to dismiss Plaintiff's amended complaint. (Doc. 25). The motion has been fully briefed and is ripe for disposition. For the reasons that follow, Defendants' motion to dismiss will

be **GRANTED**.

## II. <u>Motion to Dismiss</u>

Fed.R.Civ.P. 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted." Under Rule 12(b)(6), we must "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) (quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008)). While a complaint need only contain "a short and plain statement of the claim," Fed.R.Civ.P. 8(a)(2), and detailed factual allegations are not required, Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Id. at 570. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662 (2009) (quoting Twombly, 550 U.S. at 556). "[L]abels and conclusions" are not enough, Twombly, 550 U.S. at 555, and a court "is not bound to accept as true a legal conclusion couched as a factual

4

allegation." Id. (quoted case omitted). Thus, "a judicial conspiracy claim must include at least a discernible factual basis to survive a Rule 12(b)(6) dismissal." Capogrosso v. The Supreme Court of New Jersey, 588 F.3d 180, 184 (3d Cir. 2009) (per curiam).

In resolving the motion to dismiss, we thus "conduct a two-part analysis." Fowler, supra, 578 F.3d at 210. First, we separate the factual elements from the legal elements and disregard the legal conclusions. Id. at 210-11. Second, we "determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief". Id. at 211 (quoted case omitted).

In addition, because Plaintiff complains about "prison conditions," the screening provisions of 42 U.S.C. §1997e apply, as do the screening provisions of 28 U.S.C. §1915(e), given that he was granted *in forma pauperis* status to pursue this suit. The court's obligation to dismiss a complaint under the PLRA screening provisions for complaints that fail to state a claim is not excused even after defendants have filed a motion to dismiss. See, e.g., Lopez v. Smith, 203 F.3d 1122, 1126 n. 6 (9th Cir. 2000). Hence, if there is a ground for dismissal which was not relied upon by a defendant in a motion to dismiss, the court may nonetheless *sua sponte* rest its dismissal upon such

5

ground pursuant to the screening provisions of the PLRA. Id.

### III. Discussion

#### A. Eighth Amendment

The Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." Rouse v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999) (citing Estelle v. Gamble, 429 U.S. 97 (1976)). In order to implicate the Eighth Amendment, a condition of confinement must be so reprehensible as to be deemed inhumane under contemporary standards or one that deprives an inmate of minimal civilized measure of the necessities of life. See Hudson v. McMillian, 503 U.S. 1, 8 (1992); Wilson v. Seiter, 501 U.S. 294, 298 (1991). An Eighth Amendment claim against a prison official must meet two requirements: (1) "the deprivation alleged must be, objectively, sufficiently serious;" and (2) the "prison official must have a sufficiently culpable state of mind." Farmer v. Brennan, 511 U.S. 825, 834 (1994). In prison conditions cases, "that state of mind is one of 'deliberate indifference' to inmate health or safety." Id. In reviewing this type of claim the courts have stressed that the totality of the circumstances are critical to a finding of cruel and unusual punishment.

6

As previously stated, prison officials are required to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. "Prison conditions may amount to cruel and unusual punishment if they cause 'unquestioned and serious deprivations of basic human needs ... [that] deprive inmates of the minimal civilized measure of life's necessities.' " Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 417–18 (3d Cir. 2000) (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

Courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in Wilson v. Seiter, 501 U.S. 294, 304–05 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise—for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

In addition, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837. Critical factors which must be considered are the duration of the complainant's exposure to the alleged unconstitutional conditions and the totality of the circumstances.

As the Supreme Court has noted, "extreme deprivations are required to make out a conditions-of-confinement claim ... [b]ecause routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society'." Hudson, 503 U.S. at 9 (quoting Rhodes, 452 U.S. at 347). A plaintiff must show that the conditions to which he is exposed pose a risk of serious harm to the prisoner; a risk so serious that society is unwilling to tolerate it. Farmer, 511 U.S. at 834.

Viewing Plaintiff's complaint in the light most favorable to him, the Court finds that Plaintiff has not established a deprivation that society would be unwilling to tolerate. While it has been held that heating and ventilation are relevant considerations in determining whether prison conditions meet constitutional muster, see Tillery v. Owens, 907 F.2d 418, 427 (3d Cir. 1990),

the court must look to the totality of the circumstances surrounding the plaintiff's confinement. Wilson, 501 U.S. at 305. Here, the only condition Plaintiff complains of is the "freezing" temperature of his cell for a very limited amount of time due to the open window. Plaintiff does not allege that he did not have warm clothing or a warm blanket available to him to accommodate the cold temperature or that he asked for either warm clothing or a blanket and was denied. Nor has Plaintiff alleged any facts that would tend to show that the temperature in his cell was so cold as to pose a serious risk of physical or psychological harm. Indeed, there are no allegations that the cold temperature caused the Plaintiff anything more than discomfort. Thus, the Court finds that this is routine discomfort that is "part of the penalty that criminal offenders must pay for their offenses against society," Farmer, 511 U.S. at 834, not an extreme deprivation that constitutes a denial of "the minimal civilized measures of life's necessities." Hudson, 503 U.S. at 9. However, while the Eighth Amendment does not require plaintiff to become deathly ill before a constitutional violation will be found, "the absence of any ailment other than colds or sore throats militates against characterizing the conditions in [plaintiff's] cell as objectively serious." Benson v. Godinez, 919 F.Supp. 285, 289 (N.D. Ill. 1996). See Burkholder v. Newton, 116 F.App'x 358

(3d Cir. 2004) (noting that Eighth Amendment claims have been rejected when much harsher conditions than a cold and unsanitary cell have been alleged and that the plaintiff nevertheless failed to allege that he complained about the conditions or that the defendants acted with deliberate indifference); United States ex rel. Bracey v. Rundle, 368 F.Supp. 1186 (E.D. Pa. 1973) (cold temperature alone insufficient to constitute cruel and unusual punishment).

Because Plaintiff's allegations fail to meet the objective prong in this case, the Court need not decide whether Defendants' conduct was sufficiently culpable to violate the Eighth Amendment. See Cook v. Boyd, 881 F.Supp. 171, 174 (E.D. Pa. 1995). Suffice it to say that Plaintiff's own exhibit in support of his amended complaint demonstrates that Defendant McDonough's "standing routine is to ventilate the unit at the beginning of his shift" and that "this practice is conducted throughout the institution and is intended to replace stale air and smoke with fresh air" and that "officers are not implementing this procedure to punish inmates or to place them in a harsh environment" and "officers on the units are subjected to the same conditions that [Plaintiff] cite[s] in [his] grievance." (See Doc. 16, Plaintiff's Ex. B, Official Inmate Grievance Initial Review Response). As such, it appears that Defendant

McDonough's conduct was not objectively unreasonable or that he acted with deliberate indifference to Plaintiff's health or safety.

## B. DOC as a Defendant

It is well-settled that the DOC, as a state agency of the Commonwealth of Pennsylvania, is entitled to Eleventh Amendment immunity in the absence of Pennsylvania's consent to be sued. Lavia v. Pennsylvania Dep't of Corr., 224 F.3d 190, 195 (3d Cir. 2000). Moreover, the Supreme Court of the United States has held that states may not be sued in federal court under §1983 for either damages or injunctive relief because a state is not a "person" for §1983 purposes. See Will v. Michigan Dep't of State Police, 491 U.S. 58, 64-71 (1989); see also, Abdul-Akbar v. Watson, 4 F.3d 195, 197 n. 2 (3d Cir. 1993). Accordingly, a suit against the DOC brought in federal court is a suit against the Commonwealth and is therefore barred by the Eleventh Amendment, see Lavia, 225 F.3d at 195. As such, the Pennsylvania Department of Corrections will be dismissed as a Defendant in this action.

## C. Remaining Defendants

In a §1983 civil rights action, the Plaintiff must prove the following two essential elements: (1) that the conduct complained of was committed by a person acting under color of state law; and that the conduct complained of

11

deprived the Plaintiff of rights, privileges or immunities secured by the law or the Constitution of the United States. Parratt v. Taylor, 451 U.S. 527 (1981); Kost v. Kozakiewicz, 1 F.3d 176, 184 (3d Cir. 1993).

Additionally, each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim. See Rizzo v. Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials, 546 F.2d 1077 (3d Cir. 1976). Claims brought under §1983 cannot be premised on a theory of respondeat superior. Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988). As explained in Rode:

> A defendant in a civil rights action must have personal involvement in the alleged wrongs. . . . [P]ersonal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence. Allegations of participation or actual knowledge and acquiescence, however, must be made with appropriate particularity.

Rode, 845 F.2d at 1207.

Plaintiff fails to adequately establish personal involvement of any of the remaining named Defendants in his amended complaint. In fact, Plaintiff fails to even reference Defendant Wetzel in his amended complaint. Accordingly, the remaining Defendants are entitled to dismissal as Plaintiff fails to assert that they had any personal involvement in actions which resulted in alleged

violations of his constitutional rights.

## IV.   Conclusion

For the reasons stated above, Defendants' motion to dismiss Plaintiff's amended complaint for failure to allege an Eighth Amendment violation, failure to name an "individual" for purposes of §1983 when naming the DOC, and for failure to allege personal involvement of the remaining Defendants, will be **GRANTED**. An appropriate order shall issue.

                                                         s/ *Malachy E. Mannion*
                                                         **MALACHY E. MANNION**
                                                         **United States District Judge**

**Dated: February 16, 2016**
O:\Mannion\shared\MEMORANDA - DJ\CIVIL MEMORANDA\2015 MEMORANDA\15-0283-01.wpd